UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSEPH WILBORN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:19-cv-00082-GCS |
| | ) |
| FRANK LAWRENCE, JOHN | ) |
| MCCALEB, and VINCENT KIEFER | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Pending before the Court is Defendant's Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies. (Doc. 55). Defendant filed the Motion along with a Memorandum of Support on October 31, 2022. (Doc. 55, 56). Plaintiff filed two Responses in Opposition to Defendant's Motion for Summary Judgment. (Doc. 68, 72). Plaintiff filed his first Response in Opposition on January 19, 2023. (Doc. 68). Plaintiff then filed a second Response in Opposition on January 26, 2023. (Doc. 72). On June 8, 2023, the Court held a hearing on the Motion where the parties presented witness testimony and argument. (Doc. 82). Thereafter, the Court took the Motion under advisement. *Id.* For the reasons delineated below, the Motion for Summary Judgment filed by Defendant Lawrence is **GRANTED**. (Doc. 55).

### PROCEDURAL BACKGROUND

Plaintiff Joseph Wilborn, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Menard Correctional Center, brought this

action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. (Doc. 12). Plaintiff initially filed his case on January 28, 2019, by filing a motion for a temporary restraining order. (Doc. 1). On February 22, 2019, Plaintiff filed a motion to dismiss his case without payment of the filing fee. (Doc. 4). On September 27, 2019, the Court denied the motion to dismiss without payment of the filing fee; the Court further dismissed the case without prejudice for failure to comply with an order of the Court, *i.e.*, prepayment of the filing fee. (Doc. 5). On October 1, 2019, Plaintiff sought to reopen his case and attached a complaint to his motion. (Doc. 6). He also prepaid the filing fee. On October 17, 2020, the Court granted Plaintiff's motion to reopen the case, and his attached complaint was docketed. (Doc. 11, 12).

On November 9, 2021, the Court conducted a preliminary review of Plaintiff's complaint pursuant to 28 U.S.C. § 1915A and construed it into the following counts:

> **Count 1:** Eighth Amendment deliberate indifference to serious medical needs claim against Warden Lawrence and Dr. Siddiqui for requiring Plaintiff to be handcuffed behind his back exacerbating his right shoulder injury/condition and causing him pain.
>
> **Count 2:** Eighth Amendment excessive force claim against McCaleb and Kiefer for assaulting Plaintiff on May 5, 2018.
>
> **Count 3:** Eighth Amendment deliberate indifference to serious medical needs claim against McCaleb and Kiefer for denying Plaintiff medical care after the assault on May 5, 2018.
>
> **Count 4:** Eighth Amendment claim against Warden Lawrence and Dr. Siddiqui for Menard officials' practice of assaulting prisoners and not reporting the incident and/or falsifying reports and medical records to cover up official misconduct that resulted in the May 5, 2018 assault, and denial of medical care for four days.

(Doc. 19, p. 2). Count 1 proceeded against Defendants Siddiqui[1] and Lawrence. *Id.* at p. 5. Counts 2 and 3 proceeded against Defendants C/O McCaleb and C/O Kiefer. *Id.* The claim in Count 4 and the official capacity claims against Defendants were dismissed without prejudice. *Id.*

**FACTUAL BACKGROUND**

As Defendant Lawrence was the only defendant who filed a Summary Judgment Motion on the Issue of Exhaustion of Administrative Remedies, the Court will focus on the facts in Plaintiff's grievance record that address Defendant Lawrence. (Doc. 55). In his complaint, Plaintiff alleges that Defendant Lawrence was deliberately indifferent to his medical needs. (Doc. 12, p. 4). Particularly, Plaintiff alleges that since his arrival at Menard on April 14, 2018, he has been cuffed behind his back causing him severe pain due to a long-standing right shoulder issue. *Id.* at p. 7. Plaintiff also alleged that Defendant Lawrence was aware of his condition and failed to take any action. *Id.*

Both Plaintiff and Defendant agree that records from the Administrative Review Board ("ARB") contain four relevant grievances based on the allegations contained in Plaintiff's Complaint. (Doc. 56, p. 2-6; Doc. 72, p. 5-6). However, Plaintiff also alleges that grievances he filed "frequently came up missing at Menard." (Doc. 72, p. 4). The Court will review the procedural history of each of the relevant grievances in turn.

---

[1] On April 11, 2023, Defendant Siddiqui filed a Motion to Dismiss informing the Court that Plaintiff had negotiated a settlement agreement to resolve claims against certain Wexford Health Services, Inc. defendants named in two separate lawsuits. (Doc. 77, p. 1). Among those defendants was Defendant Dr. Siddiqui. *Id.* The Court granted the Motion to Dismiss on June 1, 2023. (Doc. 81).

*Grievance No. 55-2-19*

Plaintiff filed Emergency Grievance No. 55-2-19 on February 3, 2019. (Doc. 56, Exh. 1, p. 9). In the grievance, Plaintiff alleged that his sick call was cancelled and that he had been experiencing pain due to a dislocated shoulder. *Id.* Plaintiff further alleged that Dr. Siddiqui had confiscated his cuffing permit and that he denied Plaintiff a lower bunk permit. *Id.* Plaintiff further grieved that his shoulder injury, in part, was due to him being denied timely care by Menard doctors who lied to Plaintiff and falsified his medical records. *Id.*

The grievance was received for emergency review, and it was deemed a non-emergency on February 6, 2019. (Doc. 56, Exh. 1, p. 9). The grievance was then received by the counselor's office on February 15, 2019, and a response was provided on April 24, 2019, which instructed Plaintiff to review the attached Health Care Unit ("HCU") response. (Doc. 56, Exh. 1, p. 9). On May 23, 2019, the grievance was received by the Grievance Officer, and on December 20, 2019, it was reviewed and recommended that the grievance be denied as moot. *Id.* at p. 8. On December 23, 2019, the Chief Administrative Officer ("CAO") received the grievance and concurred with the findings of the Grievance Officer. *Id.* On December 26, 2019, Plaintiff indicated through his signature, his intent to appeal the CAO's decision. *Id.* On January 10, 2020, the ARB received the grievance and sent back a response to Plaintiff on February 4, 2020, indicating that the grievance was previously addressed on May 3, 2019. *Id.* at p. 7.

*Grievance No. 583-1-19*

Plaintiff filed Emergency Grievance No. 583-1-19 on January 28, 2019. (Doc. 56,

Exh. 1, p. 15). In the grievance, Plaintiff alleged that he continued to suffer from mobility with his right arm and shoulder, as well as the Hill Sachs in the same shoulder. *Id.* This was even though an outside doctor had continued Plaintiff on a front cuffing permit and that Menard's physical therapy had informed Plaintiff that he had limited range of motion. *Id.* The grievance also indicated that Dr. Siddiqui continued to create and follow policies that were preventing Plaintiff from receiving proper treatment. *Id.* at p. 16. Plaintiff further noted that IDOC and Wexford staff allowed his condition to worsen to the point that he now had permanent injuries. *Id.* Plaintiff also asserted that his suffering was related, in part, to Dr. Ritz's treatment policies and procedures. *Id.* Finally, Plaintiff complained that he was in constant pain due to the policies, practices, and procedures of IDOC and Wexford. In conjunction with those complaints, Plaintiff also noted that the cuffing policy in sick call was illegal, all of which forced his arm to be in a painful position.

  The grievance was received and determined to be a non-emergency on January 30, 2019. (Doc. 56, Exh. 1, p. 15). On February 28, 2019, the grievance was received by a counselor, and on April 23, 2019, a response was provided to Plaintiff instructing him to see the attached HCU response. *Id.* On May 6, 2019, the Grievance Office received this grievance and it was reviewed on May 14, 2019. *Id.* at p. 13. The Grievance Officer recommended that the grievance be found moot. *Id.* On May 21, 2019, the CAO received the grievance, and on May 22, 2019, the CAO concurred with the decision of the Grievance Officer. *Id.* On May 29, 2019, the grievance was signed by Plaintiff, indicating his intention to appeal the CAO's decision to the ARB. *Id.* On June 5, 2019, the grievance was received by the ARB, and on July 18, 2019, a response was provided finding the

grievance moot. *Id.* at p. 12. The ARB's response indicated that "Healthcare [was] addressing the medical needs of the offender." *Id.*

*Grievance No. 159-11-18*

Plaintiff filed Emergency Grievance No. 159-11-18 on November 8, 2018. (Doc. 56, Exh. 1, p. 24). Plaintiff grieved that he required a follow-up appointment from an outside doctor concerning treatment for his arm. *Id.* He also complained of various mental health issues. *Id.* The grievance was received for emergency review on November 14, 2018, and on that same date it was determined that it was not an emergency. *Id.* On November 28, 2018, the grievance was received by a Grievance Counselor, and on December 3, 2018, a response was provided directing Plaintiff to see the attached mental health response. *Id.* On December 31, 2018, the grievance was received by a Grievance Officer, and on April 4, 2019, it was reviewed and recommended that the grievance be found moot. *Id.* at p. 22. On April 4, 2019, the grievance was received by the CAO, who concurred with the Grievance Officer's decision on April 12, 2019. (Doc. 56, Exh. 1, p. 22). On April 21, 2019, Plaintiff signed the grievance, indicating his intent to appeal the CAO's decision to the ARB. *Id.* On May 1, 2019, the ARB received this grievance from the Plaintiff. *Id.* at p. 21. On May 3, 2019, the ARB denied the grievance finding that the issue was appropriately addressed by the facility administration. *Id.*

*Grievance dated August 26, 2018*

Plaintiff filed an Emergency Grievance dated August 26, 2018, alleging that he was suffering from excessive pain due to the cuffing policy. (Doc. 56, Exh. 1, p. 28). Plaintiff further indicated that the cuffing policy was exacerbating the Hill Sachs condition in his

right shoulder, thus causing continuous injury to the same. *Id.* at p. 29. The grievance was received by the ARB on October 16, 2018. *Id.* at p. 27. On October 22, 2018, the ARB returned the grievance to Plaintiff and requested that Plaintiff provide the additional following information: the original grievance including the counselor's response, if applicable; a copy of the response to Plaintiff's grievance DOC 0047, including the Grievance Officer's and CAO's response if timely; and to provide dates of when the incidents occurred. *Id.* The ARB response further indicated that personal property and medical issues were to be reviewed at the current facility prior to review by the ARB. *Id.*

Upon receiving the ARB's response, Plaintiff then proceeded to submit the grievance through the full grievance process at Menard. Plaintiff submitted the grievance for emergency review, and the CAO determined that the grievance was not an emergency on September 6, 2018. (Doc. 72, p. 30). A counselor completed a review of Plaintiff's grievance on April 23, 2019, indicating that Plaintiff should see the attached HCU response. (Doc. 72, p. 30). The Grievance Officer received Plaintiff's grievance on May 6, 2019, and the Grievance Officer completed the review on March 11, 2020. *Id.* The Grievance Officer recommended that Plaintiff's Grievance be denied. *Id.* The CAO concurred with the Grievance Officer's decision on March 16, 2020. *Id.* On March 17, 2020, Plaintiff signed the grievance indicating his intention to appeal to the ARB. *Id.* The ARB received the grievance on March 23, 2020. *Id.*

### LEGAL STANDARDS

"Summary Judgment is proper if the pleadings, discovery materials, disclosures and affidavits demonstrate no genuine issue of material fact such that [Defendants are]

entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). *See* 42 U.S.C. § 1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id*. (emphasis added). The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *See*, *e.g.*, *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that '[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id*.

Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Consequently, if a prisoner fails to use a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809. The purpose of exhaustion is to give prison officials an opportunity to address the inmate's claims internally, prior to federal litigation. *See Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

The Seventh Circuit has held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-741 (7th Cir.

2008). Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following procedures:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* at 742.

As an inmate confined in the IDOC, Wilborn was required to follow the regulations contained in the IDOC's Grievance Procedures for Offenders ("grievance procedures") to exhaust his claims. *See* 20 ILL. ADMIN. CODE § 504.800, et seq. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). The grievance form must:

> [C]ontain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much

descriptive information about the individual as possible.

20 ILL. ADMIN. CODE § 504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. *See* 20 ILL. ADMIN. CODE § 504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 ILL. ADMIN. CODE § 504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing. *Id*.

If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 ILL. ADMIN. CODE § 504.850(a). The inmate shall attach copies of the Grievance Officer's report and the Chief Administrative Officer's decision to his appeal. *Id*. "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 ILL. ADMIN. CODE § 504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, when reasonably

feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 ILL. ADMIN. CODE § 504.850(e).

## DISCUSSION

Defendant Lawrence alleges that Plaintiff has failed to exhaust his administrative remedies because Plaintiff "fail[ed] to identify Defendant Lawrence as an individual who has been deliberately indifferent to his medical needs" in any of the four relevant grievances. (Doc. 56, p. 10). Defendant notes that Plaintiff "time and time again . . . names and identifies doctors and medical staff, however he never once indicates [that] Defendant Lawrence has contributed to the denial of [Plaintiff's] medical care." *Id.* Defendant Lawrence believes this is a "fatal defect" in Plaintiff's pursuit to exhaust his administrative remedies. *Id.* (citing *Roberts v. Neal*, 745 F.3d 232, 235-236 (7th Cir. 2014)). Plaintiff disputes Defendant Lawrence's argument, noting that "the primary purpose of a grievance is to alert the prison officials to a problem not to provide personal notice to a particular official that he may be sued." (Doc. 68, p. 10). While Plaintiff's legal argument is well taken, the Court ultimately agrees with Defendant and **GRANTS** the Motion for Summary Judgment. (Doc. 55).

As an initial matter, Plaintiff has a timing problem with respect to two of the four relevant grievances. Turning first to Plaintiff's grievance of August 26, 2018, the grievance cannot exhaust Plaintiff's administrative remedies because the resolution of this grievance was still pending after Plaintiff filed the present lawsuit. "[A] prisoner who does not properly take each step in the administrative process has failed to exhaust his . . . remedies." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). "[A] suit filed by a

prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits even if the prisoner exhausts intra-prison remedies before judgment." *Thomas v. Allison*, Case No. 22-cv-834-RJD, 2023 WL 5624704, at *5 (S.D. Ill. Aug. 31, 2023) (quoting *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004)). Plaintiff refiled his lawsuit on October 1, 2019. (Doc. 6). However, Plaintiff's August 28, 2018, grievance was not received by the ARB for full consideration until March 23, 2020. (Doc. 68, p. 31). Accordingly, this grievance was not exhausted before Plaintiff filed suit.

The same can likewise be said for Grievance No. 55-2-19. Plaintiff appealed this grievance to the ARB on December 26, 2019. (Doc. 56, Exh. 1, p. 8). The ARB received the grievance on January 10, 2020, and it sent back a response to Plaintiff on February 4, 2020. *Id.* at p. 7. The ARB's response came after Plaintiff refiled his suit in October 2019. Thus, Grievance No. 55-2-19 also cannot serve to exhaust Plaintiff's administrative remedies.

Plaintiff does not have a timing problem with respect to Grievance Nos. 159-11-18 or 583-1-19. However, Plaintiff does not name Defendant Lawrence in either grievance. Defendant Lawrence's counsel argued at the June 28th Motion Hearing that Plaintiff's failure to name Defendant Lawrence was "fatal." He also argued that simply grieving generally about IDOC staff was insufficient to satisfy the procedural requirements under the PLRA, which require the grievant to name the individual or provide a description. Counsel further argued that permitting exhaustion in such circumstances would be unfair as it would allow a plaintiff to exhaust against any staff member by simply complaining generally about IDOC staff. While it would have been possible for Plaintiff

to allege a deliberate indifference complaint against Defendant Lawrence for being the individual responsible for implementing the cuffing policy, the Court agrees with Defendant that Plaintiff's failure to name Lawrence is detrimental for the purpose of exhaustion in this case. *See, e.g., Childress v. Walker*, 787 F. 3d 433, 440 (7th Cir. 2015) (noting that "allegations that a prison administrator knew that the conditions of a prison release included a ban on computer related materials, but nevertheless instituted, condoned or turned a blind eye to the practice stated a claim for relief under the Eighth Amendment."); *Terry v. Cook County Dept. of Corrections*, No. 09-cv-3093, 2010 WL 331720, at *3 (N.D. Ill. Jan. 22, 2010) (denying motion to dismiss individual capacity claim against sheriff where, "[r]ead in a light most favorable to Plaintiff, the amended complaint alleges that [sheriff] failed to correct a deliberately indifferent policy that caused a constitutional injury.").

The Illinois Administrative Code requires than an inmate's grievance "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 ILL. ADMIN. CODE §504.810(c). Although an inmate does not specifically have to identify the individual by name, he must include as much descriptive information as possible. *Id.* The Seventh Circuit has determined that the purpose of naming individuals within a grievance is not to provide notice to those individuals that may be sued, but rather to put the facility on notice of the issues that plaintiff is complaining about to provide the facility an opportunity to correct any shortcomings. *See Glick v. Walker*, No. 09-2472, 385 Fed. Appx. 579, 582 (7th Cir. July 13, 2010). In order to determine whether a grievance has put a facility on notice, courts ask

whether the grievance provided the facility with "'notice of, and an opportunity to correct, a problem.'" *See Schillinger v. Kiley*, 954 F.3d 990, 995-996 (7th Cir. 2020) (quoting *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013)). Accordingly, the inquiry turns on whether Plaintiff's remaining grievances adequately notified prison administrators about his issues with Defendant Lawrence's conduct. *See, e.g.*, *Anderson v. Larry*, No. 21-cv-944, 2022 WL 17357434, at *15 (N.D. Ill. Dec. 1, 2022) (finding that exhaustion did not occur where the substance of prisoner's grievance was distinct from those allegations pursued in litigation). Because of the content of the grievances, we conclude that the grievances fail to do so.

In Grievance No. 159-11-18, Plaintiff only discusses specific instances where he was denied follow-up medical treatment for his arm/shoulder injury on October 30, 2018, and October 31, 2018. *See, e.g.*, (Doc. 56, Exh. 1, p 24) (stating that "I need outside follow up treatment for my arm denied 10/30 and 10/31/18 . . . "). Plaintiff also complains of various mental health issues. He does not name Defendant Lawrence anywhere in the grievance. Because the primary complaint of this grievance is about medical and mental health care, Plaintiff could not have exhausted this grievance as to Defendant Lawrence. Simply put, there is nothing to put the facility on notice of a potential problem for which Defendant Lawrence exercises potential responsibility. Rather, the grievance would appear to focus solely on the actions/inactions of medical staff. Thus, the grievance cannot be found to have been exhausted Plaintiff's claim against Defendant Lawrence.

The final grievance, Grievance No. 583-1-19,[2] presents a closer call. In this grievance, Plaintiff complains about specific medical personnel and their actions/inactions regarding his arm and shoulder, but does not name Defendant Lawrence. Plaintiff further complains that the harmful Menard cuffing policies were responsible for exacerbating his shoulder injury. *See* (Doc. 56, Exh. 1, p. 16). By only naming "IDOC and Wexford Staff" in conjunction with the complaint about the cuffing policy, those processing the grievances reasonably concluded that Plaintiff was only complaining about those who directly interacted with Plaintiff and physically acted on the cuffing policy. Had Plaintiff meant to pursue a complaint against Lawrence, he could have identified Lawrence by his title of "warden." This would have placed the prison on notice that he was concerned with Lawrence's conduct as the implementor of the policy and not just the IDOC and Wexford staff with whom he directly interacted.

Furthermore, Plaintiff's situation is distinct from those circumstances where courts have allowed plaintiffs to proceed against defendants when they generically identify them as a "doctor" or "nurse." This is because many doctors and nurses work at the prison facilities and their identities may be difficult for plaintiffs to ascertain. In contrast, there is only one warden at Menard Correctional Center. Additionally, Plaintiff testified at the hearing that he knew there was a warden for the facility (even though he did not know the warden's name) and that he was aware of his policy making authority. Thus,

---

[2] The Court notes that Plaintiff's *Monell* claim against Defendants Siddiqui and Lawrence was dismissed without prejudice on November 9, 2021, because there is no "supervisor liability" under 42 U.S.C. § 1983. (Doc. 19, p. 4).

Plaintiff needed to identify Defendant Lawrence with more particularly to pursue him as a defendant. *See, e.g.*, *Taylor Walls v. Johnson*, Case No. 16-CV-18-NJR-DGW, 2017 WL 603838, at *3 (S.D. Ill. Feb. 15, 2017) (finding that plaintiff's failure to name a defendant where clear evidence existed that he knew defendant at the time he filed the grievance frustrated his attempt to exhaust his administrative remedies). This is especially true, here, where Plaintiff named other individuals specifically in his grievance. As a result, Plaintiff has failed to exhaust his administrative remedies under Grievance No. 583-1-19.

## CONCLUSION

For the reasons stated above, Defendant Lawrence's Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies is **GRANTED**. (Doc. 55). The Clerk of Court is directed to enter judgment accordingly in favor of Defendant Lawrence at the conclusion of this case.

**IT IS SO ORDERED.**

**DATED: September 30, 2023.**

Digitally signed by Judge Sison 2
Date: 2023.09.30 14:06:18 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**